UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FERMIN G. ESQUIVEL,

    Petitioner,

v.

HEIDI LACKNER,

    Respondent.

Case No. 15-cv-05357-WHO (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Petitioner Fermin Esquivel seeks federal habeas relief from his state convictions on grounds that the trial court violated his constitutional rights by admitting (1) evidence that another man had been convicted of molesting petitioner's niece, E.D.; (2) evidence that E.D.'s family was threatened with harm if E.D. testified against Esquivel; and (3) expert witness testimony on child sexual abuse accommodation syndrome.  None of these claims has merit and, for the reasons set forth below, the petition for habeas relief is DENIED.

## BACKGROUND

In 2012, a Santa Clara County Superior Court jury on retrial[1] convicted Esquivel of several counts of committing lewd and lascivious acts on a child under the age of 14, and

---

[1] The first prosecution ended in a mistrial. (Ans., Ex. 6 at 6.)

1  aggravated sexual assault of a child.  He received a sentence of 75 years to life, with the
2  possibility of parole, in state prison. His efforts to overturn his conviction in state court
3  were unsuccessful.  This federal habeas petition followed.
4      The victims of these crimes were Esquivel's niece and nephew, E.D. and L.D., who
5  are siblings, and their step-brother M.D.:

### Victim E.D.

> During the time E.D. lived in the apartment, she was molested by two differed [*sic*] men.  One was Balbino Acevedo and the other was [Esquivel].  E.D. did not confuse the two men, because Acevedo is much older than [Esquivel].  Acevedo's molestation was earlier in time than [Esquivel]'s, and the acts were more frequent and more serious.

> When E.D. was about seven or eight years old, she was outside the apartment, and [Esquivel] asked her to come in and sit next to him in the living room.  E.D. sat in front of [Esquivel] on the couch, facing away from him, and he touched her breast, vagina, and buttocks over her clothes.  Other people were in the apartment at the time, but no one was in the same room.

> After [Esquivel] moved out of the apartment to return to Mexico, he came back to visit and stayed in the apartment.  During one visit, he quickly touched E.D.'s face and body over her clothing.
> . . . .

### Victim M.D.

> When M.D. lived in the apartment, M.D. remembered waking up one morning, when he was about six or seven years old, and seeing [Esquivel] walking out of his room.  M.D. was clothed, and he did not remember [Esquivel] touching him. About a day or two later, M.D. woke up and felt [Esquivel] in bed with him.  M.D.'s pants were pulled down slightly, and he felt moisture on his buttocks.  M.D. was laying on his side, and he felt [Esquivel]'s hand pulling or tugging him between his waist and rib cage, and the tip of [Esquivel]'s penis touching him between the cheeks of his buttocks.  [Esquivel] was in the bed with M.D. for about six or seven minutes.

> M.D. remembered similar activity happening about six times during a one-month period.  Each time M.D. had been in bed after his mother left for work, and no one else was in the room.  Each incident occurred on a

2

weekday around 6:00 or 7:00 a.m., in the spring or summer, before M.D. went to school. [Esquivel] told M.D. that everything was okay, and that it was their "secret." [Esquivel] never used force on M.D., other than tugging or pulling him close. M.D. was afraid that if he said anything about what was happening, it could cause problems for his family. M.D. and his family moved to a new apartment about one to three weeks after the last incident.

. . . .

### Victim L.D.

One afternoon during the summer when L.D. was about eight or nine years old, [Esquivel] took him into his mother's room and put a pornographic movie on the television. [Esquivel] threatened L.D. verbally and told him to take his clothes off. [Esquivel] grabbed L.D., sat him on his lap, and penetrated his anus with his penis. L.D. tried to get away, but [Esquivel] had locked the door and was holding him. [Esquivel] touched L.D.'s penis and had L.D. touch his penis. The incident ended when L.D. pulled up his pants and [Esquivel] went into the kitchen. [Esquivel] told L.D. that if he told anyone, [Esquivel] would kill him and his parents.

L.D. said that [Esquivel] also touched him twice in [Esquivel]'s bedroom. On those occasions, [Esquivel] asked L.D. to go into his bedroom, and [Esquivel] closed the door. He put his penis in L.D.'s buttocks, and had L.D. touch his penis. [Esquivel] also threatened L.D. and used force to get him into the bedroom, but [Esquivel] never hit him.

(Ans., Ex. 6 (State Appellate Opinion, *People v. Esquivel*, No. H039035, 2014 WL 6632980 (Cal. Ct. App. Nov. 24, 2014) (unpublished)) at 2-6.)

### STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

When presented with a state court decision that is unaccompanied by a rationale for its conclusions, a federal court must conduct an independent review of the record to determine whether the state court decision is objectively reasonable. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). This "[i]ndependent review is not a *de novo* review of the constitutional issue, but rather, the only method by which [a federal court] can determine whether a silent state court decision is objectively unreasonable." *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "[W]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *See Harrington v. Richter*, 562 U.S. 86, 98 (2011).

## DISCUSSION

### I. Admission of Evidence of Acevedo's Convictions

Esquivel claims that his right to due process was violated when the trial court

4

disclosed to the jury that another man, Balbino Acevedo, had been convicted of sexual crimes against E.D. (Pet. at 8.) He believes such evidence impermissibly bolstered E.D.'s credibility. If one jury found her credible, another might think her credibility a settled fact, or simply be more inclined to find her credible.

This evidence was disclosed only after defense counsel had repeatedly alluded to Acevedo's trial on several occasions in the jury's presence.[2] Concerned that the jury might be confused or have questions, the trial court gave the jury a summary of the relevant facts. It also instructed the jury that Acevedo's trial could not be used to bolster E.D.'s credibility:

> [O]n May 24, 2012, Mr. Balbino Acevedo was convicted. There was a hearing that we refer to up here in 2011 as it pertained to [Esquivel.] [¶] . . . [¶] As to Mr. Acevedo's trial, this fact by itself is not sufficient to bolster or discredit a witness. I will be reading the appropriate witness evaluation standards. You have already had it [*sic*] before we started the trial. [¶] Those factors that go towards believability are extremely important as it relates to this trial, as it pertains to that particular — all witnesses, but it is not to be given any significant weight. [¶] That fact, the fact of her testimony, we're talking about [E.D.], is not sufficient by itself to prove that Mr. Esquivel is guilty of the accusations in Counts 1 through 13. The People must still prove each element of every charge beyond a reasonable doubt.

(Ans., Ex. 6 at 7.) Esquivel contends that the jury might infer that "because E.D. previously told the truth about being molested by someone else, she must be telling the truth about Petitioner." (Pet. at 10.)

Esquivel's claim was rejected by the state appellate court. The trial court's statement was a reasonable response to defense counsel's repeated allusions to Acevedo. Not only did the trial court clear up any confusion, it explicitly instructed the jury that it was not to consider the conviction or trial as bolstering evidence. This instruction, along with the repeated instructions on reasonable doubt and the prosecution's burden of proof,

---

[2] When E.D. spoke to police about Acevedo, she did not mention Esquivel or his acts. This omission constituted making "inconsistent statements," according to defense counsel. (Ans., Ex. 6 at 7.) Counsel attempted to impeach E.D. with these "inconsistent statements."

1  sufficiently protected Esquivel's rights.  (Ans., Ex. 6 at 8-9.)

2        Habeas relief is not warranted here.  First, the state appellate court reasonably
3  determined that the trial court protected, rather than violated, Esquivel's constitutional
4  rights.  In the face of possibly confusing references to Acevedo, the trial court told the jury
5  to not misuse or misconstrue the Acevedo evidence, and to adhere to its prior instructions.
6  The Court must presume that the jurors followed their instructions.  *See Richardson v.*
7  *Marsh*, 481 U.S. 200, 206 (1987).

8        Second, the record does not support Esquivel's claim that the jury may have found
9  E.D. more credible because of the Acevedo evidence.  There is nothing in the instructions
10  that encouraged or even suggested that this was permissible.  Rather, the instructions
11  explicitly prohibited such a consideration.  Acevedo's conviction says nothing about
12  Esquivel's guilt.  Each man acted without the knowledge of the other's acts.

13        Third, the trial court sought to prevent jury confusion over an issue <u>defense counsel</u>,
14  and no one else, created.[3]  Such evidence was deemed irrelevant by the prosecutor, who
15  before trial asked that <u>no</u> mention be made about Acevedo's conviction.  (Ans., Dkt. No. 9-
16  5 at 211)[4].  However, defense counsel insisted on referring to Acevedo, which necessitated
17  a clarifying instruction from the court.  If anything, the record shows that the trial court
18  wanted to protect, not violate, petitioner's rights.

19        Fourth, even if the evidence were prejudicial, Esquivel cannot obtain habeas relief
20  on this claim.  The Supreme Court "has not yet made a clear ruling that admission of
21  irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to
22  warrant issuance of the writ."  *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009)
23  (finding that trial court's admission of irrelevant pornographic materials was

---

[3] Defense counsel was the first to mention Acevedo's name in front of the jury (Ans., Dkt. No. 9-9 at 96), the first to tell the jury that Acevedo had molested E.D., (*id.*), and the first to allude to Acevedo's conviction, which she did by saying "Acevedo's trial," (*id.* at 232). Both petitioner (Pet. at 8) and the trial court (Ans., Dkt. No. 9-10 at 8-9) mistakenly believe that the court itself first mentioned the fact of Acevedo's conviction.

[4] Citations to the reporter's and clerk's transcripts are to the pages generated by the Court's electronic filing system.

6

1  "fundamentally unfair" under Ninth Circuit precedent but not contrary to, or an
2  unreasonable application of, clearly established federal law under § 2254(d)).
3       The state court's rejection of this claim was reasonable and therefore is entitled to
4  AEDPA deference.  This claim is DENIED.

## II. Admission of Threat Evidence

After E.D. reported Esquivel's crime to police, E.D.'s family allegedly received threats of death or harm, and offers of a bribe, to "drop the charges." (Pet. at 14.)  The threats and bribe offer were made to E.D.'s grandmother, who told E.D.'s mother, who then told E.D., who testified about them at trial. (Ans., Ex. 6 at 9.)  Prior to trial, the trial court ruled that the threat evidence was admissible to show the effect on the hearer.

At trial, when E.D. testified about the threats, defense counsel objected on hearsay grounds.  The trial court found the evidence relevant to E.D.'s state of mind, overruled the objection, and instructed the jury as follows:

> The evidence of threats to various persons by third parties is admissible only to show that these threats, if true, played some part in the witness's state of mind, attitude, bias, actions, prejudice, or lack of prejudice, not that any threats were actually delivered.  [¶]  So, in other words, that's the sole basis for this evidence coming in.

(Ans., Ex. 6 at 9.)  This instruction's import was reinforced for the jury when the trial court sustained defense counsel's objections that E.D.'s testimony lacked personal knowledge or other reliable foundation. (*Id.*, Dkt. No. 9-9 at 715-18.)  Also, the jury later received an instruction just prior to deliberations that if evidence had been admitted for a limited purpose, the jury could consider the evidence only for that purpose. (*Id.*, Dkt. No. 9-5 at 91.)

Esquivel claims admission of E.D.'s testimony violated his right to due process because it was unreliable hearsay. (Pet. at 12.)  This claim was rejected on appeal.  "The evidence was relevant and offered to demonstrate E.D.'s state of mind at the time of testifying.  Moreover, the court admonished the jury twice that the threats were only

United States District Court
Northern District of California

1  offered for the purpose of showing E.D.'s mental state while testifying." (Ans., Ex. 6 at
2  10.)
3        Habeas relief is not warranted here. First, this Court must presume that the jury
4  followed its instructions to read the evidence only for its effect on E.D.'s state of mind,
5  rather than for the truth of the matter asserted. *See Marsh*, 481 U.S. at 206.
6        Second, "[u]nder AEDPA, even clearly erroneous admissions of evidence that
7  render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief
8  if not forbidden by clearly established [Supreme Court precedent]." *Holley v. Yarborough*,
9  568 F.3d 1091, 1101 (9th Cir. 2009) (internal quotation marks omitted). "Because there is
10 no Supreme Court case establishing the fundamental unfairness of admitting multiple
11 hearsay testimony *Holley* prohibits" this Court from granting relief on the very claim
12 Esquivel presents here. *Zapien v. Martel*, 805 F.3d 862, 869 (9th Cir. 2015).
13       The state appellate court's rejection of this claim was reasonable, and therefore is
14 entitled to AEDPA deference. This claim is DENIED.

15 **III.  Admission of Testimony Regarding CSAAS**

16       At trial, an expert witness for the prosecution, Carl Lewis, testified about child
17 sexual abuse accommodation syndrome ("CSAAS"):

> Lewis explained that CSAAS encompasses five categories of behavior:
> (1) secrecy; (2) helplessness; (3) entrapment and accommodation;
> (4) delayed, conflicted, and unconvincing disclosure; and (5) retraction.
> Not all five categories appear in every case. Secrecy can occur when
> abusers tell the child not to say anything or the child will get in trouble or
> not be believed. Helplessness describes a child's dependence on adults for
> many things in their lives, and the inability to make the abuse stop.
> Entrapment and accommodation can be demonstrated by children feeling
> trapped in the abuse, and appearing emotionless when they report it.
> Delayed disclosure refers to the fact that there is often a delay between the
> abuse and its disclosure. Finally, retraction refers to the situation where a
> child makes a disclosure of abuse, but later denies that it happened or
> minimizes it after it is reported outside the family.

(Ans., Ex. 6 at 10-11.)

      Esquivel claims the admission of this irrelevant and prejudicial evidence violated

his right to due process. (Pet. at 19.) Specifically, he alleges the testimony "gave the jury a means to reject petitioner's attacks on their credibility," and told the jury that "it should not doubt the claims of abuse." (*Id.* at 22.) He contends also that CSAAS is based on outdated and incorrect beliefs about child molestation. (*Id.* at 19-21.)

This claim was rejected by the state appellate court:

> A review of the record shows the testimony was properly admitted in this case. For example, there were conflicting disclosures about the molestations among the three victims. Specifically, L.D. at first said that [Esquivel] was violent when he molested him, but later changed his story. In addition, the characteristics of helplessness, secrecy and entrapment in a child suffering from CSAAS were present and demonstrated by the victims' silence about the molestations for years, including months when defendant was living in the same apartment with them. Finally, the defense attorney attacked the credibility of the victims, arguing they gave inconsistent stories about the abuse, and failed to report the abuse for a period of time.

(Ans., Ex. 6 at 12.)

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of a fundamentally fair trial guaranteed by due process. *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999). Only if there are no permissible inferences that the jury may draw from the evidence may its admission violate due process. *See Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991).

The Ninth Circuit has upheld against due process challenges the use of CSAAS evidence in child abuse cases. *Brodit v. Cambra*, 350 F.3d 985, 991 (9th Cir. 2011). "[W]e have held that CSAAS testimony is admissible in federal child-sexual-abuse trials, when the testimony concerns general characteristics of victims and is not used to opine that a specific child is telling the truth." *Id.* Furthermore, there is "no clear Supreme Court law that a California Court of Appeal violated or unreasonably applied" when it admitted such evidence. *Id.*

*Brodit* forecloses Esquivel's claim. It upheld the use of CSAAS evidence when, as

9

1  here, it is used to show the general characteristics of victims and is not used to opine that a
2  specific child is telling the truth.  As was true when *Brodit* was decided, there is no
3  Supreme Court decision on point showing that the state appellate court's rejection of this
4  claim was unreasonable.

5  The jury instructions guided the jurors to use the CSAAS testimony in a way that
6  was consonant with the constitutional requirements set forth in *Brodit*.  The jury was given
7  CALCRIM 1193 ("Testimony On Child Sexual Abuse Accommodation Syndrome").
8  (Ans., Ex. 1, Vol. 3 at 565.)  This instruction explicitly states that testimony about CSAAS
9  "is not evidence that the defendant committed any of the crimes charged against him."
10  (*Id.*)  Rather, CSAAS testimony could be used only in deciding whether E.D.'s, L.D.'s,
11  and M.D.'s "conduct was not inconsistent with the conduct of someone who had been
12  molested, and in evaluating the believability of his/her testimony."  (*Id.*)

13  The testimony itself contained the same warnings, as Esquivel himself admits.  (Pet.
14  at 21.)  Lewis repeatedly testified that CSAAS does not show that a particular child was in
15  fact sexually molested.  "It should not be used as any kind of measuring device or
16  predictive device or diagnostic tool because no such tool exists."  (Ans., Dkt. No. 9-10 at
17  89.)  He was asked several times whether it was possible that behavior consonant with
18  CSAAS could also mean the abuse did not happen, he said that the "abuse may not be true.
19  This is not a device to tell us what is true or not.  My answer would be the same to all your
20  questions."  (*Id.* at 103.)  Rather than being predictive or diagnostic, CSAAS provides
21  "information that shows us from clinical observations and experience that the realities of
22  children who disclose sexual abuse does not necessarily match our preconceived ideas or
23  previously held myths about the nature of sexual abuse."  (*Id.* at 87.)

24  The jury could draw permissible inferences from the testimony to explain why the
25  victims exhibited the contradictory behavior.  For example, the CSAAS testimony explains
26  why E.D. did not mention Acevedo's acts when she spoke to police about Esquivel.
27  *Jammal*, 926 F.2d at 920.

28  It was also a permissible rebuttal to the defense.  Defense counsel contended that

United States District Court
Northern District of California

E.D.'s alleged inconsistency undermined her credibility. CSAAS provided another explanation for E.D.'s inconsistency.

The state court's rejection of this claim was reasonable and is entitled to AEDPA deference. Accordingly, this claim is DENIED.

## CONCLUSION

The state court's adjudication of Esquivel's claims did not result in decisions that were contrary to, or involved an unreasonable application of, clearly established federal law, nor did they result in decisions that were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Esquivel may seek a certificate of appealability from the Ninth Circuit.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

**Dated:** February 3, 2017



WILLIAM H. ORRICK
United States District Judge